UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GARY L. FOSTER, | NO. CIV. 2:10-518 WBS GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS AND TO STRIKE |
| SCME MORTGAGE BANKERS, INC., et. al., | |
| Defendants. | |

----oo0oo----

Plaintiff Gary L. Foster brought this action against defendants SCME Mortgage Bankers, Inc. ("SCME"), Clever Key Financial, LLC, Clever Key Financial, Inc., West Coast Mortgage, Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc. ("Homecomings"), Mortgage Electronic Registration Systems Inc. ("MERS"), Deutsche Bank Trust Co. Americas, Aurora Loan Services LLC ("Aurora"), Cal-Western Reconveyance Corporation, Frederick Winston Williams II, and Deborah Diaz, arising out of defendants' allegedly wrongful conduct relating to a loan

1

agreement. Presently before the court are Homecomings' motion to dismiss plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Aurora and MERS's motion to dismiss and to strike portions of the FAC pursuant to Rule 12(f).

I. <u>Factual and Procedural Background</u>

On April 1, 2006, plaintiff entered into an Option Adjustable Rate Note loan agreement for $496,000.00 with SCME to refinance an existing loan. (FAC ¶¶ 22, 31.) The loan was secured by plaintiff's residence. (Id. ¶ 22.) Plaintiff alleges that he did not receive copies of the loan documents from SCME at closing or any time thereafter. (Id. ¶ 23.) He alleges that he was not provided with a meaningful opportunity to review the documents, and that the documents contained blank spaces when he signed them. (Id. ¶¶ 32-33.) After the closing, he allegedly tried to ask Diaz, the notary present at the closing, for copies of the documents, but he could not locate her. (Id. ¶¶ 33-34.) He also attempted to obtain copies from Diaz's employer and from an escrow officer, but did not succeed. (Id. ¶¶ 35-36.) Plaintiff alleges that he finally received a copy of the loan documents from Aurora, the loan servicer, in December of 2009. (Id. ¶ 23.) He alleges numerous irregularities in the loan documents, including falsified information on the loan application. (Id. ¶¶ 27-29.)

On July 9, 2009, a Notice of Default on plaintiff's property was recorded in the San Joaquin County Recorder's Office. (Homecomings' Req. for Judicial Notice in Supp. of Reply in Supp. of Mot. to Dismiss Pl.'s FAC (Docket No. 129) Ex. B.)

2

On January 15, 2010, a Notice of Trustee's Sale was recorded. (Id. Ex. C.)  On July 29, 2010, a Trustee's Deed upon Sale for the property was recorded.  (Id. Ex. E.)  Plaintiff has since been evicted.  (Pl.'s Opp'n to Defs.' Mots. to Dismiss (Docket No. 119) at 1:13-14.)

As relevant to these motions, plaintiff's FAC (Docket No. 50 Ex. 1) alleges claims against Homecomings for violations of the Truth in Lending Act ("TILA"), against Aurora for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, and against Homecomings and MERS for wrongful foreclosure and quiet title.  Aurora, MERS, and Homecomings now move to dismiss the claims against them under Rule 12(b)(6) and Aurora and MERS also move to strike plaintiff's claims for punitive damages.[1]

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This

---

[1] Aurora and MERS's motion to strike plaintiff's claims for punitive damages is moot, as plaintiff does not request punitive damages against these defendants.  (See FAC ¶¶ 121-123, 141, 144.)

"plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57) (internal quotation mark omitted).

In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The parties have requested that the court take notice of the Deed of Trust, Notice of Default, Notice of Trustee's Sale, Assignment of Deed of Trust, and Trustee's Deed upon Sale for the subject property. The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned. See Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001). The parties also request that the court take judicial notice of the Truth in Lending Disclosure Statement and the Adjustable Rate Mortgage Program Disclosure executed on April 1, 2006, letters between plaintiff and Aurora, and documents related to the federal stock charter for Lehman Brothers Bank. These documents are not judicially noticeable,

4

and the court declines to consider them for purposes of this motion to dismiss.

### A. TILA Claim against Homecomings

Plaintiff brings a claim for damages under TILA, alleging that the parties failed to make required disclosures related to his loan. (FAC ¶¶ 42-58.) While Homecomings contends that it was a loan servicer, not an assignee, plaintiff alleges that Homecomings was an assignee of the deed of trust. (Id. ¶ 12.) An assignee can only be liable for the initial creditor's failure to give proper TILA disclosures if the violation is apparent on the face of the disclosure statement. 15 U.S.C. § 1641(e)(1). A violation is apparent on the face of the disclosure statement if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement" or if the statement does not use the terms and format required by TILA. Id. § 1651(e)(2); see White v. Homefield Fin., Inc., 545 F. Supp. 2d 1159, 1168 (W.D. Wash. 2008) ("Although the Ninth Circuit does not appear to have addressed this question, TILA's assignee liability provision has been interpreted by other courts as meaning that a TILA claim may be asserted against an assignee only for 'violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents.'") (quoting Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998)); see also Romero v. Countrywide Bank, N.A., --- F. Supp. 2d ----, ----, 2010 WL 2985539, at *9 (N.D. Cal. July 27, 2010).

The alleged violations of TILA complained of by

5

plaintiff are not the sort that could be apparent on the face of the disclosure statement. Plaintiff alleges that the statement provided incorrect information regarding the annual percentage rate ("APR") and the interest rate on which the payment schedule was based, and failed to disclose the facts that the initial rate was discounted and that negative amortization was certain to occur. (FAC ¶¶ 46-58.) Plaintiff does not explain how any of these alleged TILA violations could have been discovered from the face of the disclosure statement or other documents, and the court cannot conceive of any way by which Homecomings could have discovered the violations on the face of the documents. See Romero, 2010 WL 2985539, at *5-10 (finding that assignee could not discover the same four alleged TILA violations on the face of the documents). Homecomings could not have known from looking at the documents that the disclosed APR and payment schedule interest rate were inaccurate. Without looking beyond the documents, it would not have realized that the initial rate was discounted or that negative amortization was certain to occur. Homecomings, as an assignee, cannot be held liable for the initial creditor's failure to give proper TILA disclosures. Accordingly, plaintiff's TILA claim is dismissed as to Homecomings.

        B.    UCL Claim against Aurora

        Plaintiff brings a UCL claim against Aurora, alleging that Aurora failed to provide plaintiff with the loan documents he requested in July of 2009, only providing them in December of 2009. (FAC ¶¶ 112-115.) California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."

1  Cal. Bus. & Prof. Code § 17200.  This cause of action is
2  generally derivative of some other illegal conduct or fraud
3  committed by a defendant, and a plaintiff "must state with
4  reasonable particularity the facts supporting the statutory
5  elements of the violation."  Khoury v. Maly's of Cal., Inc., 14
6  Cal. App. 4th 612, 619 (2d Dist. 1993).

7       "Under its 'unlawful' prong, 'the UCL borrows
8  violations of other laws . . . and makes those unlawful practices
9  actionable under the UCL.'"  Berryman v. Merit Prop. Mgmt., Inc.,
10 152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (quoting Lazar v.
11 Hertz Corp., 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999)).
12 "Thus, a violation of another law is a predicate for stating a
13 cause of action under the UCL's unlawful prong."  Id.  Plaintiff
14 has not alleged that Aurora violated any laws; indeed, this is
15 the only claim pled against Aurora, and it contains no
16 allegations of unlawful conduct.

17      A "fraudulent" business act or practice is one in which
18 members of the public are likely to be deceived.  Olsen v.
19 Breeze, Inc., 48 Cal. App. 4th 608, 618 (3d Dist. 1996).
20 Plaintiff has not alleged that Aurora engaged in any fraudulent
21 practices.

22      Finally, a business practice is "unfair" when it
23 "violates established public policy or if it is immoral,
24 unethical, oppressive or unscrupulous and causes injury to
25 consumers which outweighs its benefits."  McKell v. Wash. Mut.,
26 Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006).  Even if
27 failing to give plaintiff copies of the loan documents for five
28 months was violative of established public policy, which

7

plaintiff has not shown, plaintiff has not alleged any injury he suffered as a result of Aurora's conduct. The only injury alleged is that plaintiff was delayed in "being able to examine his loan documents to discover false and inaccurate documentation and information." (FAC ¶ 120.) California Business and Professions Code section 17204 sets out the statutory standing requirements for a section 17200 claim, and authorizes a private right of action only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. California courts have interpreted this provision as requiring that the plaintiff show that he has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he has a cognizable claim. See Hall v. Time, Inc., 158 Cal. App. 4th 847, 854-55 (4th Dist. 2008) (listing cases). Plaintiff has alleged no such injury. Given that plaintiff did not possess the loan documents for three years before requesting them from Aurora, it is unclear what injury could possibly have resulted from Aurora's five-month delay. His loan payments during that time period were entirely unconnected to his request for copies, and he does not allege that the foreclosure somehow occurred as a result of Aurora's inaction. Accordingly, the court will dismiss plaintiff's UCL claim against Aurora.

    C.    <u>Wrongful Foreclosure Claim against Homecomings and MERS</u>

Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale. See <u>Karlsen v. Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (2d Dist. 1971).

8

Plaintiff's only allegations of wrongdoing in the foreclosure process are that MERS, the nominee for the lender, is not entitled to do business in California and that MERS lacked authority to substitute the trustee under the Deed of Trust. (FAC ¶¶ 136-139.) As explained in the court's previous orders denying plaintiff's motions for a temporary restraining order and preliminary injunction, these arguments are meritless. MERS is statutorily exempted from the requirement to obtain a certificate of qualification to conduct business in California, and MERS did possess the authority to substitute the trustee. (See June 25, 2010, Order at 6:1-24 (Docket No. 85); April 7, 2010, Order at 8:6-11:17 (Docket No. 22).)

As plaintiff has alleged no wrongful conduct in conjunction with the foreclosure on his home, the court will dismiss plaintiff's claim for wrongful foreclosure as to Homecomings and MERS.

D.  Quiet Title Claim against Homecomings and MERS

The purpose of a quiet title action is to establish one's title against adverse claims to real property. A basic requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." Kelley v. Mortg. Elec. Registration Sys., Inc., 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). Plaintiff acknowledges that, now that the home has been foreclosed on and he has been evicted, he can no longer maintain an action to quiet title.

IT IS THEREFORE ORDERED that the moving defendants' motions to dismiss plaintiff's First Amended Complaint be, and

9

the same hereby are, GRANTED.  Plaintiff's claims for TILA violations as to Homecomings, UCL violations as to Aurora, and wrongful foreclosure and quiet title as to Homecomings and MERS are dismissed.

If plaintiff wishes to amend the complaint to cure the defects explained above, he may do so within twenty days from the date of this Order.  Otherwise, the case will proceed under the First Amended Complaint on plaintiff's remaining claims.

DATED:  January 19, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE