UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GARY L. FOSTER,

        Plaintiff,

   v.

SCME MORTGAGE BANKERS, INC., et. al.,

        Defendants.
_____/

NO. CIV. 2:10-518 WBS GGH

MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS

----oo0oo----

Plaintiff Gary L. Foster brought this action against defendants SCME Mortgage Bankers, Inc. ("SCME"), Clever Key Financial, LLC, Clever Key Financial, Inc., West Coast Mortgage, Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc. ("Homecomings"), Aurora Loan Services LLC ("Aurora"), Deutsche Bank Trust Co. ("Deutsche"), Frederick Winston Williams II, and Deborah Diaz, arising out of defendants' allegedly wrongful conduct relating to a loan agreement. Presently before the court are Homecomings's motion to dismiss plaintiff's Second

1

Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Aurora and Deutsche's motion to dismiss the SAC pursuant to Rule 12(b)(6).

I.   Factual and Procedural Background

On April 1, 2006, plaintiff entered into an option adjustable rate mortgage with SCME for a $496,000.00 loan to refinance an existing loan.  (SAC ¶¶ 19, 28 (Docket No. 138).) The note was secured by plaintiff's primary residence at 25652 Dodds Road of Escalon, California.  (Id. ¶¶ 6, 19.)  Plaintiff alleges that he did not receive copies of the "loan documents" from SCME at closing.  (Id. ¶ 20.)  He alleges that he was not provided with a meaningful opportunity to review the documents, and that the documents contained blank spaces when he signed them.  (Id. ¶¶ 29-30.)

After the closing, he allegedly tried to ask Diaz, the notary present at the closing, for copies of the documents, but he could not locate her.  (Id. ¶¶ 31.)  He also unsuccessfully attempted to obtain copies from Diaz's employer and from an escrow officer.  (Id. ¶¶ 32-33.)  Plaintiff eventually received a copy of the loan documents from Aurora in December of 2009.  (Id. ¶¶ 20, 24.)  He alleges numerous irregularities in the loan documents, including falsified information on the loan application.  (Id. ¶¶ 24-26.)  Foster also alleges four violations of the Truth in Lending Act ("TILA") related to the note and Truth in Lending Disclosure Statement.  (Id. ¶¶ 35-64.)

On July 9, 2009, a notice of default for plaintiff's property was recorded in the San Joaquin County Recorder's Office.  (Homecomings's Req. for Judicial Notice in Supp. of Mot.

2

to Dismiss Pl.'s SAC Ex. B (Docket No. 140).)  On January 15, 2010, a notice of trustee's sale was recorded. (Id. Ex. C.)  On July 29, 2010, a trustee's deed upon sale for the property was recorded.  (Id. Ex. E.)  Plaintiff has since been evicted. (Pl.'s Opp'n to Defs.' Mots. to Dismiss at 1:13-14 (Docket No. 119).)

As relevant to these motions, plaintiff's SAC alleges claims against Homecomings and Deutsche for violations of TILA, 15 U.S.C. §§ 1601-1667f, (first cause of action) and against Homecomings, Deutsche, and Aurora for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, (seventh cause of action).  Plaintiff alleges that the moving defendants were assignees of the note, (SAC ¶¶ 12-14), a factual allegation disputed by defendants.  (See Homecomings's Notice of Mot., Mot., & Mem. of P. & A. in Supp. of Mot. to Dismiss Pl.'s SAC at 3:24-4:21 (Docket No. 139); Aurora & Deutsche's Mot. to Dismiss Pl.'s SAC; Mem. of P. & A. at 7:11-16, 11 n.3 (Docket No. 142).)

II.  Discussion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009), and where a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

3

relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In deciding whether a plaintiff has stated a claim, the court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation mark omitted).

In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

The moving defendants have requested that the court take notice of the Deed of Trust, Notice of Default, Notice of Trustee's Sale, Assignment of Deed of Trust, and Trustee's Deed Upon Sale for the subject property.  (Homecomings's Req. for Judicial Notice in Supp. of Mot. to Dismiss Pl.'s SAC Exs. A-E; Req. for Judicial Notice in Supp. of Mot. to Dismiss SAC filed by Aurora and Deutsche Exs. 1, 4-5 (Docket No. 143).)  The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.

2001). Aurora and Deutsche also request that the court take judicial notice of the Adjustable Rate Note and the notice of transfer of servicing rights to Aurora. (Req. for Judicial Notice in Supp. of Mot. to Dismiss SAC filed by Aurora and Deutsche Exs. 2-3.) These documents are not judicially noticeable, and the court declines to consider them.

Plaintiff requests that the court take judicial notice of the Third Amended Class Action Complaint in an <u>unrelated</u> case in the Northern District of California, the California Corporations Commissioner's Order to Discontinue Residential Lending and/or Servicing Activities Pursuant to Section 50319, California Financial Code, pertaining to SCME, the Commissioner's Order Summarily Revoking Residential Mortgage Lender and/or Servicer License pertaining to SCME, and the Clerk's entry of default as to Deutsche in this case. (Req. for Judicial Notice Exs. A-C (Docket No. 153).) The unrelated complaint is not factually relevant to this action and the court declines to judicially notice it. The court does not need to judicially notice the entry of default to consider it. The court will judicially notice the Commissioner's orders since they are matters of public record whose accuracy cannot be questioned.[1] See <u>Lee</u>, 250 F.3d at 689.

A.  <u>TILA Damages Claim against Homecomings and Deutsche</u>

---

[1] Plaintiff has requested that the court strike Aurora and Deutsche's recitation of facts in its moving brief. (Pl.'s Opp'n to Mot. of Defs. Aurora & Deutsche to Dismiss SAC; Pl.'s Mot. to Strike at 1:18-2:2 (Docket No. 152).) The court declines to strike Aurora and Deutsche's recitation of facts in their argument, but notes that the court only considers the allegations in the Second Amended Complaint and judicially noticeable facts for purpose of these motions.

5

1           The statute of limitations for a TILA damages claim is
2    one year from the occurrence of a violation.  15 U.S.C. §
3    1640(e).  The "limitations period in [s]ection 1640(e) runs from
4    the date of consummation of the transaction."  King v. State of
5    Cal., 784 F.2d 910, 915 (9th Cir. 1995).  Here, the transaction
6    was consummated in 2006 and plaintiff filed suit in 2010, and
7    thus the statute of limitations has run.
8           "[T]he doctrine of equitable tolling may, in the
9    appropriate circumstances, suspend the limitations period until
10   the borrower discovers or had reasonable opportunity to discover
11   the fraud or nondisclosures that form the basis of the TILA
12   action."  Id.  The applicability of the equitable tolling
13   doctrine often depends on matters outside the pleadings and thus
14   "is not generally amenable to resolution on a Rule 12(b)(6)
15   motion."  Supermail Cargo, Inc. v. United States, 68 F.3d 1204,
16   1206 (9th Cir. 1995) (quoting Cervantes v. City of San Diego, 5
17   F.3d 1273, 1276 (9th Cir. 1993)) (internal quotation marks
18   omitted).  Nonetheless, when a plaintiff fails to allege facts
19   suggesting that he did not have a reasonable opportunity to
20   discover the violation, dismissal may be appropriate.  See Meyer
21   v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003);
22   Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996).
23          Here, plaintiff alleges that he did not receive his
24   "loan documents" at the time of signing and was unsuccessful in
25   his subsequent attempts to obtain them.  (SAC ¶¶ 20, 24, 29-33.)
26   Plaintiff finally received them in December of 2009 from Aurora.
27   (Id. ¶¶ 20, 24.)  While the court recognizes that plaintiff's SAC
28   suggests that he ceased attempting to obtain the loan documents

6

after a couple of unsuccessful attempts, plaintiff's allegations in support of equitable tolling are sufficient at this early stage to the extent that he alleges TILA violations within the loan documents as opposed to a violation for failure to provide the loan documents, for which he was clearly on notice.

Plaintiff alleges four TILA violations relating to disclosure of the annual percentage rate, payment schedule, negative amortization, and the initial interest rate.

First, plaintiff alleges a TILA violation related to disclosure of the annual percentage rate.  Section 1638 requires a lender to disclose the "annual percentage rate."  15 U.S.C. § 1638(a)(4).  The term "annual percentage rate" must be used.  Id.  The annual percentage rate ("APR") is the "cost of [] credit as a yearly rate."  12 C.F.R. § 226.18(e).  Section 1638(a)(8) requires lenders to provide a "[d]escriptive explanation[]" of the APR.  15 U.S.C. § 1638(a)(8).  According to the official staff commentary for Regulation Z, if the initial interest rate will later be adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."  12 C.F.R. Pt. 226, Supp. I (C) § 226.17(c)(1)-10.i.

Plaintiff alleges that the lender failed to clearly and conspicuously disclose the APR.  The Truth in Lending Disclosure Statement allegedly stated that the "percentage rate for the loan was 7.375%."  (SAC ¶ 52.)  However, "the note disclosed a percentage rate of 2.2%."  (Id.)  The essence of this alleged

7

TILA violation is the lender provided contradictory information on the APR.  Other courts have permitted these factual allegations to survive a motion to dismiss.  See, e.g., Romero v. Countrywide Bank, N.A., 740 F. Supp. 2d 1129, 1140 (N.D. Cal. 2010); Amparan v. Plaza Home Mortg., Inc., 678 F. Supp. 2d 961, 970 (N.D. Cal. 2008); Pham v. T.J. Fin., Inc., No. CV 08-275, 2008 WL 3485589, at *2 (C.D. Cal. Aug. 11, 2008); Plascencia v. Lending 1st Mortg., No. C 07-4485, 2008 WL 1902698, at *4 (N.D. Cal. Apr. 28, 2008).

Second, plaintiff alleges that the lender failed to clearly and conspicuously disclose that the Truth in Lending Disclosure Statement's payment schedule was not based on the APR:

> Plaintiff's loan amount reflected in the TILA Disclosure Statement was almost $500,000, and the APR was about 7%, so the annual interest payment was in the vicinity of thirty-five thousand dollars, or a bit under $3500 per month. But the monthly payment of $1883 listed in the Disclosure Statement was nowhere near the vicinity of $3500--indeed, it was around half as much.

(SAC ¶ 55.)

Section 226.18 of the Code of Federal Regulations describes specific information that creditors must disclose to consumers in closed-end credit transactions, including a payment schedule.  12 C.F.R. § 226.18(g).  Section 226.17 governs general disclosure requirements.  Subsection (c), governing the basis of disclosures and use of estimates, requires that the disclosures "reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17(c)(1).  The commentary explains that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."  12 C.F.R. Pt. 226, Supp. I (C) § 226.17(c)(1)-2.  In a variable rate transaction

8

with a discounted or premium rate, "disclosure should not be based solely on the initial terms." Id. Pt. 226, Supp. I (C) § 226.17(c)(1)-8.

A number of courts have permitted a claim for failure to clearly and conspicuously disclose that the payment schedule was not based on the APR. See, e.g., Romero, 740 F. Supp. 2d at 1138; Amparan, 678 F. Supp. 2d at 973; Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1064 (C.D. Cal. 2008).

Third, plaintiff alleges that the lender failed to state that negative amortization was a certainty:

> Where the amount of monthly payments is set at a level lower than monthly accrued interest, as was the case for the payment schedule of the TILA disclosure statement, the lender must fully disclose the fact that negative amortization will occur.
>
> The lender stated in the Note that negative amortization was only a possibility.

(SAC ¶¶ 56-57.)

"A number of courts have recognized the viability of claims for failure clearly and conspicuously to disclose the certainty of negative amortization." Amparan, 678 F. Supp. 2d at 972 (collecting cases) (emphasis added). Section 226.19 requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). The commentary adds that "[a] creditor must disclose, where applicable, the possibility of negative amortization." 12 C.F.R. Pt. 226, Supp. I (C) § 226.19(b)(2)(vii)-2. Moreover, "[i]f a consumer is given

9

the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as [that] negative amortization <u>will</u> occur and the principal loan balance <u>will</u> increase." <u>Id.</u> (emphases added).

Fourth, the lender allegedly failed to disclose that the initial interest rate was "discounted":

> Plaintiff's loan agreement specified that the interest rate would be calculated as the sum of an interest rate index plus a margin, and the margin was stated to be 3.325% (the "margin" was the profit margin).
>
> The loan agreement disclosed on its face an initial interest rate of 2.2%. Since 2.2% is less than 3.325%, it was clear from the face of the loan agreement that the lender was legally obligated to disclose to Plaintiff that this initial rate was discounted, but had failed to do so.

(SAC ¶¶ 60-61.) The lender also allegedly failed to inform plaintiff that after the discount rate expired, the interest rate would increase, and the lender allegedly failed to describe all of the circumstances under which the interest rate would increase. (<u>Id.</u> ¶ 62.)

A "discounted" rate is an initial interest rate "that is not determined by the index or formula used to make later interest rate adjustments." 12 C.F.R. Pt. 226, Supp. I (C) § 226.19(b)(2)(v)-1. If the initial interest rate is discounted, "creditors must alert the consumer to this fact." <u>Id.</u>

The court finds that plaintiff's alleged facts are sufficient to state a claim against the <u>creditor</u> for TILA violations. However, plaintiff relies on assignee liability to hold Homecomings and Deutsche liable for alleged TILA violations

10

because SCME was the creditor. While Homecomings contends that it was only a servicer, not an assignee, plaintiff alleges that Homecomings was an assignee of the note. (SAC ¶ 12.) Deutsche argues that it was not an assignee because the deed of trust and the note were extinguished when the property was sold. Plaintiff alleges that Deutsche is the "latest purchaser and assignee of Plaintiff's note." (Id. ¶ 14.)

While it is unclear whether the moving defendants were in fact assignees, construing the facts and all reasonable inferences in favor of plaintiff, it plausible that defendants were assignees.[2] See Pelayo v. Home Capital Funding, No. 08-CV-2030, 2009 WL 1459419, at *4 (S.D. Cal. May 22, 2009); Cabalo v. EMC Mortg. Corp., No. 08-5667, 2009 U.S. Dist. LEXIS 8283, at *6 (N.D. Cal. Feb. 5, 2009) (finding the plaintiff sufficiently pled that defendant mortgage servicer was liable under TILA under circumstances where "it [was] not clear who the loan's holder [was]" and "documents submitted by defendants [did] not show [an assignment of the loan] was never made").

Section 1641(e) provides that an assignee may only be liable if the TILA violation "is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(e)(1)(A). A violation is apparent on the face of the disclosure statement if "(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the

---

[2] The judicially noticed publicly-recorded documents do not conclusively show otherwise. (See Homecomings's Req. for Judicial Notice in Supp. of Mot. to Dismiss Pl.'s SAC Exs. A-E (Docket No. 140); Req. for Judicial Notice in Supp. of Mot. to Dismiss SAC filed by Aurora and Deutsche Exs. 1, 4-5 (Docket No. 143).)

11

1 amount financed, the note, or any other disclosure of
2 disbursement" or "(B) the disclosure statement does not use the
3 terms or format required." Id. § 1641(e)(2)(A)-(B).  A servicer
4 may only be held liable if it was also the owner of the
5 obligation.  Id. § 1641(f).

6      "Although the Ninth Circuit does not appear to have
7 addressed this question, TILA's assignee liability provision has
8 been interpreted by other courts as meaning that a TILA claim may
9 be asserted against an assignee only for 'violations that a
10 reasonable person can spot on the face of the disclosure
11 statement or other assigned documents.'" White v. Homefield
12 Fin., Inc., 545 F. Supp. 2d 1159, 1168 (W.D. Wash. 2008) (quoting
13 Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir.
14 1998)).

15      The court finds that the plaintiff has stated
16 sufficient facts to plausibly suggest that a reasonable person
17 would have spotted that the lender had violated TILA disclosure
18 rules by failing to clearly and conspicuously disclose the APR,
19 that the payment schedule was not based on the APR, that negative
20 amortization was certain to occur, or that the initial interest
21 rate was discounted.  See Yang v. Home Loan Funding, Inc., No. CV
22 F 07-1454 AWI GSA, 2010 WL 670958, at *9 (E.D. Cal. Feb. 22,
23 2010); Jordan v. Paul Fin., LLC, 644 F. Supp. 2d 1156, 1173 (N.D.
24 Cal. 2009); cf. Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d
25 1049, 1068 (C.D. Cal. 2008).  Plaintiff has alleged facts to cure
26 the insufficiencies identified in the court's previous Order.
27 (January 20, 2011, Order at 5:28-6:22 (citing Romero, 740 F.
28 Supp. 2d at 1136-1141) (Docket No. 133).)  Accordingly, the court

will deny the motion to dismiss the TILA claim for damages as to Homecomings and Deutsche.

B.   <u>UCL Claim against Homecomings, Deutsche, and Aurora</u>

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."[3] <u>Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999). "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." <u>Id.</u> (internal quotation marks omitted). "Fraudulent" as used in the UCL "does not refer to the common law tort of fraud" but only requires a showing that members of the public "are likely to be deceived." <u>Puentes v. Wells Fargo Home Mortg., Inc.</u>, 160 Cal. App. 4th 638, 645 (4th Dist. 2008) (internal quotation marks omitted).

Plaintiff's UCL claim against the moving defendants incorporates the prior allegations and also alleges that plaintiff was "induced" by "SCME and Clever Key Defendants" to enter an "illegal loan," a loan that "was designed to default." (SAC ¶ 117.) The moving defendants then allegedly "perpetuat[ed] the original illegality" by buying the loan. (<u>Id.</u> ¶ 118.) The moving defendants allegedly "knew or should have known" that plaintiff's loan documents violated TILA and the moving defendants have allegedly "knowingly trafficked in the purchase

---

[3] The moving defendants have not argued that the UCL claim is preempted by TILA, <u>see</u> 15 U.S.C. § 1610 (preemption provision), or the Home Owners Loan Act ("HOLA"), <u>see</u> 12 C.F.R. § 560.2 (preemption regulation). Thus, the court declines to consider this defense.

13

and sale of illegal OARM loans." (Id. ¶¶ 118-19.)

Plaintiff's UCL claim under the unlawful prong appears to rest solely on TILA. Because the court has already found that the allegations of assignee liability for TILA violations are sufficient,[4] the court will deny the motion to dismiss the UCL claim under the unlawful prong.[5] Jordan, 644 F. Supp. 2d at 1173 ("Because the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under California law, it stands to reason that HSBC may be held liable as an assignee under the UCL to the same extent that it may be held liable under TILA.") (citation omitted); Cazares v. Pac. Shore Funding, No. CV04-2548DSF, 2006 WL 149106, at *7 (C.D. Cal. Jan. 03, 2006) ("Being an assignee in violation of TILA or HOEPA is an unlawful practice.").

Plaintiff's UCL claim under the fraudulent prong seems to advance two theories. First, the disclosures in the loan documents were allegedly "fraudulent," as defined in the UCL. However, the moving defendants were not the original creditor and the UCL does not permit vicarious liability. See In re First Alliance Mortg. Co., 471 F.3d 977, 996 n.6 (9th Cir. 2006). Plaintiff has only offered conclusory allegations of aiding and

---

[4] Plaintiff did not bring the TILA claim against Aurora. However, plaintiff incorporated the TILA violation allegations into the UCL claim against Aurora and alleged that Aurora was assigned the note. (See SAC ¶¶ 14, 116.)

[5] A private plaintiff has standing under the UCL only if he "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The SAC's factual allegations plausibly suggest that plaintiff has suffered either a loss of money or property as the result of the moving defendants' conduct.

14

abetting and joint venture liability.

The second theory that plaintiff seems to advance is that the moving defendants are liable for a fraudulent scheme to induce plaintiff into a loan designed to default. Even though a UCL claim under the fraudulent prong not does require a showing of fraud as defined at common law, plaintiff must meet heightened pleading standards under Federal Rule of Civil Procedure 9(b) because the allegations sound in fraud. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL claim). Under Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the misconduct charged. Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Plaintiff has failed to offer the required particularity and instead makes general, conclusory allegations. Accordingly, the court will dismiss the UCL claim to the extent it relies on fraudulent acts or practices.

IT IS THEREFORE ORDERED that the moving defendants' motions to dismiss plaintiff's Second Amended Complaint be, and the same hereby are, GRANTED with respect to plaintiff's UCL claim for fraudulent acts or practices and DENIED in all other respects.

If plaintiff wishes to amend his UCL claim to cure the defects explained above, he may do so within twenty days from the

///
///
///
///

date of this Order. Otherwise, the case will proceed under the Second Amended Complaint on plaintiff's remaining claims.

DATED: April 8, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE